UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARVIN W. JOHNSON,<br>Defendant. | Case No. 92-cr-00497-EMC-1<br><br>**ORDER GRANTING DEFENDANT'S AMENDED MOTION TO VACATE; AND STAYING RELIEF**<br><br>Docket No. 483 |

Defendant Marvin Johnson has filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** Mr. Johnson's motion but **STAYS** the relief pending the Supreme Court's decision in *Lynch v. Dimaya*, No. 15-1498, 2016 U.S. LEXIS 4461 (granting petition for writ of certiorari).

## I. FACTUAL & PROCEDURAL BACKGROUND

Mr. Johnson was arrested in 1992 in connection with drug trafficking, firearm, and arson charges. After a jury trial, he was convicted on sixteen counts, including multiple counts for violation of 18 U.S.C. § 924(c), which penalizes use of a destructive device during a drug trafficking crime or during a crime of violence. For the § 924(c) count related to a drug trafficking crime (Count 3), Mr. Johnson received a sentence of 30 years. For the § 924(c) counts related to the crime of violence of arson (Counts 10, 15, and 21), Mr. Johnson received three life sentences without release. For the § 924(c) count related to the crime of violence of witness tampering (Count 23), Mr. Johnson received a sentence of 20 years. All these sentences are to be served concurrently.

Mr. Johnson's judgment was affirmed by the Ninth Circuit. *See United States v. Johnson*,

51 F.3d 283 (9th Cir. 1995). Approximately twenty years later, the Supreme Court issued its decision *Johnson v. United States*, 135 S. Ct. 2551 (2015) (hereinafter *Johnson II*). (The criminal defendant in *Johnson II* is unrelated to Mr. Johnson.) In *Johnson II*, the Supreme Court addressed the constitutionality of a provision of the Armed Career Criminal Act ("ACCA") – more specifically, the provision under which a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three of more previous convictions for a "violent felony." The ACCA defined "violent felony" in two ways:

> "any crime punishable by imprisonment for a term exceeding one year . . . that –
>
> "(i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii)    is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."

*Id.* at 2555-56 (quoting 18 U.S.C. § 924(e)(2)(B) (emphasis added)). "The closing words . . . , italicized above," are known as the ACCA's "residual clause." *Id.* at 2556.

Overruling *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 464 U.S. 1 (2011), the *Johnson II* Court held that the residual clause of the ACCA is unconstitutionally vague. As explained by the Court:

> [T]he [ACCA] requires courts to use a framework known as the categorical approach when deciding whether an offense "is burglary, arson, or extortion, or involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Under the categorical approach, a court assesses whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."
>
> Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk of physical injury. . . .
>
> . . . .
>
> Two features of the residual clause conspire to make it unconstitutionally vague. In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined "ordinary case" of a crime, not to real-world facts or statutory

2

elements. How does one go about deciding what kind of conduct the "ordinary case" of a crime involves? . . . .

At the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise "serious potential risk" standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction. . . . By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.

*Id.* at 2557-58.

Several months after *Johnson II* was decided, the Ninth Circuit issued its decision *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). In *Dimaya*, the Department of Homeland Security ("DHS") charged the petitioner with being removable because he had been convicted of a "crime of violence" for which the term of imprisonment was at least one year. The applicable definition for "crime of violence" was found in 18 U.S.C. § 16:

"(a) any offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

"(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

*Id.* at 1112 (quoting 18 U.S.C. § 16).

The petitioner argued that, based on *Johnson II*, § 16(b) – which used language similar to that in the ACCA's residual clause – was unconstitutionally vague. The Ninth Circuit agreed:

The language in ACCA that *Johnson [II]* held unconstitutional is similar. . . . Importantly, both the provision at issue here [§ 16(b)] and ACCA's residual clause are subject to the same mode of analysis. Both are subject to the categorical approach, which demands that courts "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to the petitioner's crime.

*Id.* at 1115. The court continued: "§ 16(b) is subject to *identical* unpredictability and arbitrariness as ACCA's residual clause." *Id.* (emphasis added). "As with ACCA's residual clause, § 16(b)'s definition of a crime of violence[] combines 'indeterminacy about how to measure the risk posed by a crime [*i.e.*, the ordinary case predicament] with indeterminacy about how much risk it takes

3

for the crime to qualify as' a crime of violence." *Id.* at 1117.

Notably, the Ninth Circuit rejected the government's argument that the residual clause in the ACCA was materially different from § 16(b) because the former, unlike the latter, made reference to four enumerated offenses (*i.e.*, burglary, arson, extortion, or a crime involving use of explosives). "*Johnson [II]* . . . made plain that the residual clause was void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses." *Id.* at 1118. That is, "while the listed offenses added to the uncertainty, the fundamental reason for the [Supreme] Court's holding was the residual clause's application of the serious risk standard to an idealized ordinary case of the crime." *Id.* at 1117-18 (internal quotation marks omitted).

The Ninth Circuit also rejected the government's contention that there was a material difference because "the ACCA's residual clause requires courts to consider the risk that would arise after completion of the offense" whereas "§ 16(b) applies only to violence occurring 'in the course of committing the offense.'" *Id.* at 1118 (quoting 18 U.S.C. § 16(b)). The court expressed "doubt that this phrase actually creates a distinction between the two," but, "even if such a distinction did exist," it would not matter: The residual clause was found unconstitutionally vague because it combined the above-described indeterminacies, and "[t]his reasoning applies equally whether the inquiry considers the risk of violence posed by the commission and the aftereffects of a crime, or whether it is limited to consideration of the risk of violence posed by acts necessary to satisfy the elements of the offense." *Id.* at 1118-19.

Finally, the Ninth Circuit was not persuaded by the fact that "§ 16(b) has not generated the same degree of confusion among the courts that ACCA's residual clause generated" – confusion which the Supreme Court specifically made note of in *Johnson II*. *Id.* at 1119.

> That the Supreme Court has decided more residual clause cases than § 16(b) cases . . . does not indicate that it believes the latter clause to be any more capable of consistent application. We can discern very little regarding the merits of an issue from the composition of the Supreme Court's docket.

*Id.*

The Ninth Circuit did note, however, that it did "not reach the constitutionality of

4

applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) [*i.e.*, the Immigration and Nationality Act (INA)]." *Id.* at 1120 n.17. Subsequently, the Supreme Court granted the petition for a writ of certiorari in *Dimaya*.

In the instant case, Mr. Johnson invokes *Johnson II* and *Dimaya* to argue that his sentences for four § 924(c) counts should be convicted – more specifically, Counts 10, 15, 21, and 23 which are predicated on use of a destructive device during a "crime of violence" (as opposed to a drug trafficking crime), with the crime of violence in this case being either arson or witness tampering. Mr. Johnson points out that § 924(c) contains language identical to that in § 16(b). More specifically, § 924(c) provides for certain sentences for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). "Crime of violence" is defined as

> an offense that is a felony and –
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*.

*Id.* § 924(c)(3) (emphasis added). The language in paragraph (B) above is identical to that in § 16(b) which was at issue in *Dimaya*. For ease of reference, paragraph (B) shall hereinafter be referred to as the residual clause of § 924(c)(3) and paragraph (A) as the elements clause.

## II. DISCUSSION

A. Legal Standard

Title 28 U.S.C. § 2255(a) provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As indicated above, in the instant case, Mr. Johnson contends that his sentence with respect to Counts 10, 15, 21, and 23 was imposed in violation of the Constitution because the residual clause in

5

§ 924(c)(3) is void for vagueness. Mr. Johnson further argues that, if the residual clause in § 924(c)(3) is unconstitutionally vague, he is entitled to relief because his sentence for the above counts cannot be sustained on the grounds that arson and witness tampering are "crimes of violence" under § 924(c)(3)'s elements clause.

B. Procedural Default

As an initial matter, the Court addresses the government's argument that Mr. Johnson procedurally defaulted his *Johnson II* claim. This argument lacks merit.

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review." *Sanchez-Lamas v. Oregon*, 548 U.S. 331, 350-51 (2006). But "[t]here is an exception if a defendant can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so."[1] *Id.* at 351. In the instant case, Mr. Johnson has adequately established both cause and prejudice.

With respect to cause, this Court recently noted in a different case that, under *Reed v. Ross*, 468 U.S. 1 (1984),

> "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."
> At least one circumstance that renders a claim "novel" is present here: [that is,] *Johnson [II]* "explicitly overruled" previous Supreme Court precedent [*i.e.*, *James* and *Sykes*].

*United States v. Jefferson*, No. 14-cr-00105-EMC-1, 2016 WL 6496456, at *3 (N.D. Cal. Oct. 19, 2016).

The Court acknowledges that, with respect to the instant case, *James* and *Sykes* were actually decided many years after Mr. Johnson was sentenced. However, as Mr. Johnson points

---

[1] For purposes of this opinion, the Court need not address whether there is an exception to the procedural default rule based on actual innocence. In its papers, the government states that "it is unclear whether the 'actual innocence' exception applies outside the capital sentencing context." Opp'n at 12 (citing *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004) ("We are asked in the present case to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. We decline to answer the question in the posture of this case and instead hold that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default.")).

6

out, "at the time of his sentencing in 1993, the Ninth Circuit had already rejected a vagueness challenge to the ACCA" and further had "analyzed whether a federal statute qualified as a 'crime of violence' under § 924(c)'s residual clause without any constitutional concerns." Opp'n at 3 n.5. *See, e.g.*, *United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990) (holding that defendant's "voice for vagueness argument fails . . . because there is no indication that the sentence enhancement provision at issue is so vague that it grants undue discretion to law enforcement officials[;] [t]he factors for sentence enhancement under 18 U.S.C. § 924(e)(1) are quite specific"); *United States v. Mendez*, 992 F.2d 1488, 1491-92 (9th Cir. 1993) (concluding that a conspiracy to rob in violation of 18 U.S.C. § 1951 is a crime of violence under the residual clause of § 924(c)(3)). Under these circumstances, the Court finds the cause prong satisfied.

As for prejudice, if Mr. Johnson were to prevail on this motion, then, *inter alia*, the § 924(c) counts based on arson (Counts 10, 15, and 21) would be vacated – counts for which he received three life sentences without release. As Mr. Johnson points out, "[w]ithout the convictions, [he] could have received a release date." Reply at 4. Thus, prejudice is clear as well.

Because there is both cause and prejudice, the Court now turns to the merits of Mr. Johnson's motion.

C.  *Johnson II*'s Applicability

The government acknowledges that, several months ago, this Court held in *United States v. Baires-Reyes*, No. 15-cr-00122-EMC-2, 2016 U.S. Dist. LEXIS 74192 (N.D. Cal. June 7, 2016), that the residual clause in § 924(c)(3) – which Mr. Johnson challenges here – is unconstitutionally vague based on *Johnson II* and *Dimaya*. Nevertheless, the government asks the Court to reconsider its decision because, since *Baires-Reyes* was decided, several circuit courts have held that either the residual clause of § 924(c)(3) or § 16(b) (the statute at issue in *Dimaya*) is not void for vagueness. *See, e.g.*, *United States v. Prickett*, No. 15-3486, 2016 U.S. App. LEXIS 18032 (8th Cir. Oct. 5, 2016) (§ 924(c)(3)(B)); *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016) (§ 924(c)(3)(B)); *United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (en banc) (§ 16(b)); *see also United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016) (holding, before *Baires-Reyes* was decided, that the residual clause of § 924(c)(3) is not unconstitutionally vague;

7

recognizing that "the Seventh and Ninth Circuits recently invalidated 18 U.S.C. § 16(b) under *Johnson [II]*'s reasoning" but declining to follow those cases).[2] *But see Baptiste v. AG United States*, No. 14-4476, 2016 U.S. App. LEXIS 20140 (3d Cir. Nov. 8, 2016) (holding, after *Baires-Reyes* was decided, that § 16(b) is void for vagueness in the context of the INA).

The Court is not persuaded. The reasoning of the circuit opinions cited above, and the arguments that the government now presents, were rejected by the Ninth Circuit in *Dimaya*.

The government protests still that *Dimaya* should be restricted to the INA context, citing the Sixth Circuit's *Shuti* decision, *see* note 3, *supra*, as well as the Ninth Circuit's own statement in *Dimaya* that it was not "reach[ing] the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) [*i.e.*, the INA]." *Dimaya*, 803 F.3d at 1120 n.17. But, as even the government admits, the *Dimaya* court "did not explain its reasons for explicitly limiting its holding to the INA." Opp'n at 17. And the Court does not discern a limiting principle in *Dimaya* that would insulate § 924(c)(3)(B) from the same problem of unconstitutional vagueness.

Moreover, the Sixth Circuit's reconciliation of its *Shuti* and *Taylor* opinions seems strained. The *Shuti* court tried to differentiate the ACCA residual clause from the residual clause

---

[2] In *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), however, the Sixth Circuit found § 16(b)'s definition of "crime of violence" for purposes of the INA unconstitutionally vague. The court explained that its decision was consistent with its earlier decision in *Taylor*:

> There, we held that 18 U.S.C. § 924(c)'s definition of crime of violence was not unconstitutionally vague. That conclusion, we think, makes perfect sense because the statute at issue in *Taylor* is a criminal offense and "creation of risk is an element of the crime." As the *Johnson [II]* Court determined, no doubt should be cast upon laws that apply a qualitative risk to "*real-world facts* or *statutory elements*." Unlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt – by a jury, in the same proceeding. This makes all the difference. And as district courts have engaged with 18 U.S.C. § 924(c) on the front lines, they have often "appl[ied] the substantial risk element . . . to the actual conduct in the present case."
>
> We understand *Taylor*, then, as applying *Johnson [II]*'s real-world conduct exception to uphold the constitutionality of 18 U.S.C. § 924(c)(3)(B).

*Id.* at 450.

of § 924(c)(3) because § 924(c) "is a criminal offense and 'creation of risk is an element of the crime.'" *Shuti*, 828 F.3d at 449 (quoting *Johnson II*). But *Johnson II* discusses a creation of risk as an element of the crime in addressing the elements clause of the ACCA, not the residual clause:

> The court's task [for the residual clause] goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime "has *as an element* the use . . . of physical force [*i.e.*, the elements clause]," the residual clause asks whether the crime '*involves conduct*' that presents too much risk of physical injury.

*Johnson II*, 135 S. Ct. at 2557 (emphasis in original).

In essence, the *Johnson II* Court was focusing on how the ACCA residual clause required more than elements clause because of the language "involves conduct." A similar analysis applies here. Section 924(c)(3)'s residual clause requires more than its elements clause because it defines crime of violence as a felony "that by its nature, *involves a substantial risk* that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B) (emphasis added).

Furthermore, "the [ACCA] residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" because "[i]t ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Johnson II*, 135 S. Ct. at 2257. That is true of § 924(c)(3)'s residual clause too. A court must consider the ordinary case of a crime for § 924(c)(3) because of the categorical approach used for the statute. Thus, contrary to what the Sixth Circuit concluded in *Shuti*, § 924(c)(3)'s residual clause cannot fall within *Johnson II*'s "real-world conduct exception." *Shuti*, 828 F.3d at 450.

Accordingly, the Court declines the government's suggestion that it should revisit its holding in *Baires-Reyes*. *Dimaya* counsels in favor of concluding that § 924(c)(3)'s residual clause is no different from the ACCA residual clause or § 16(b). However, as discussed below, because *Dimaya* is currently under review by the Supreme Court, that also counsels in favor of a stay if the Court were to grant Mr. Johnson relief.

D. <u>Elements Clause</u>

For the reasons discussed above, the Court concludes that the residual clause of § 924(c)(3)

9

is unconstitutionally vague. However, that does not automatically give Mr. Johnson relief if, as he himself recognizes, Counts 10, 15, and 21 (arson) and Count 23 (witness tampering) could still be deemed crimes of violence under the statute's elements clause instead of its residual clause. Mr. Johnson contends, of course, that arson and witness tampering cannot be crimes of violence under the elements clause.

The government does not dispute that witness tampering is not a crime of violence under the elements clause. But it maintains that arson is a crime of violence.[3]

In resolving this issue, the Court begins first by taking note of the relevant statutes.

- The elements clause of § 924(c)(3) provides that an offense is a crime of violence if it is a felony and "has an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).
- Mr. Johnson's convictions for arson were pursuant to 18 U.S.C. § 844(f) which penalizes a person who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance." *Id.* § 844(f).

In his papers, Mr. Johnson presents three arguments as to why arson (18 U.S.C. § 844(f)) is not a crime of violence under the elements clause: (1) because the elements clause requires the intentional use of force and § 844(f) can be satisfied by a lesser intent, *i.e.*, recklessness; (2) because the elements clause requires the use of force against the property of another and § 844(f) can be violated if a defendant commits arson against his own property; and (3) because "physical force" for purposes of the elements clause means violent force and § 844(f) can be violated by nonviolent conduct.

---

[3] The government also asserts that Mr. Johnson's argument regarding the elements clause is untimely. But, as Mr. Johnson contends in his reply, the government's position is meritless. "Mr. Johnson is not bringing an 'elements clause claim' at all; he is bringing a residual clause claim, challenging the constitutionality of § 924(c)(3)(B)." Reply at 9 (emphasis omitted). The elements clause is only an issue because of the government's position that (in effect) any constitutional error with respect to the residual clause is harmless.

10

For purposes of this opinion, the Court need only address Mr. Johnson's first argument. In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Supreme Court addressed the elements clause of § 16 (*i.e.*, § 16(a)), which is identical in language to the elements clause of § 924(c)(3). The issue for the Court was whether a state DUI statute that did not require proof of any mental state or that required only proof of negligence could satisfy the elements clause of § 16. The Court held that such a statute could not.

> The critical aspect of § 16(a) is that a crime of violence is one involving the "use . . . of physical force *against the person or property of another*." . . . "[U]se" requires active employment. While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use . . . physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their "ordinary or natural" meaning. The key phrase in § 16(a) – the "use . . . of physical force against the person or property of another" – most naturally suggests a higher degree of intent than negligent or merely accidental conduct.

*Id.* at 10 (emphasis in original).

The Supreme Court added, however, that it was not deciding "the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." *Id.* at 13 (emphasis added).

Two years after *Leocal*, the Ninth Circuit decided *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc). In *Fernandez-Ruiz*, an alien was deemed removable based on a crime of domestic violence. The crime of domestic violence was an assault, and assault, as defined in the state statute, meant intentionally, knowingly, or recklessly causing any physical injury to another person. The question for the Ninth Circuit was whether assault, so defined, was a crime of violence for purposes of § 16(a) (as a crime of domestic violence incorporated the standard for a crime of violence under § 16(a)). "[T]he determinative question is whether '*recklessly* causing . . . physical injury to another person' necessarily involves 'the use of physical force against the person . . . of another,'" as required by § 16(a). *Id.* at 1126.

In resolving this issue, the Ninth Circuit looked first to *Leocal*, noting that, although

11

"*Leocal* expressly reserved the question whether crimes of violence can include offenses involving the reckless use of force, two of our sister circuits have interpreted the reasoning of *Leocal* to place such offenses beyond the reach of 18 U.S.C. § 16." *Id.* at 1127 (citing Fourth and Third Circuit cases). The Ninth Circuit ultimately agreed

> that the reasoning of *Leocal* – which merely holds that using force negligently or less is not a crime of violence – extends to crimes involving the reckless use of force.
>
> Citing with approval our holding in *Trinidad-Aquino* that crimes of violence must have a volitional element and so cannot include crimes of negligence, the *Leocal* Court went a step further: the Court not only endorsed the position that crimes of violence must be volitional but also repeatedly emphasized that such crimes cannot be "accidental." *See Leocal*, 543 U.S. at 8-10; *see also Lara-Cazares*, 408 F.3d at 1221 (rejecting the argument that *Leocal* adds nothing to *Trinidad-Aquino*). "Accidental" means "[n]ot having occurred as a result of anyone's purposeful act." Black's Law Dictionary 16 (8th ed. 2004). "Purposeful" means "[d]one with a specific purpose in mind; DELIBERATE." *Id.* at 1272. Reckless conduct, as generally defined, is not purposeful. *See id.* at 1298 (defining recklessness as "[c]onduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk" (emphasis added)). Even more clearly, reckless conduct as defined by Arizona law is not purposeful. *See* Ariz. Rev. Stat. § 13-105(9)(c) (defining recklessness as "consciously disregard[ing] a substantial and unjustifiable risk that the result will occur or that the circumstance exists," and providing that "[a] person who creates such a risk *but is unaware of such risk solely by reason of voluntary intoxication* also acts recklessly" (emphasis added)). Thus, the reckless use of force is "accidental" and crimes of recklessness cannot be crimes of violence. *See Oyebanji*, 418 F.3d at 264; *Tran*, 414 F.3d at 470-71.

*Id.* at 1129-30. The Ninth Circuit emphasized that it saw "no 'important differences between negligence and recklessness'" because recklessness – *i.e.*, "subjective awareness of possibility of injury" – "is not the same as the *intentional* use of physical force against the person of another." *Id.* at 1130 (emphasis in original); *see also United States v. Castleman*, 134 S. Ct. 1405, 1414 n.8 (2014) (noting that, "[a]lthough *Leocal* reserved the question whether a reckless application of force could constitute a 'use' of force, the Courts of Appeals have almost uniformly held that recklessness is not sufficient").

In its opposition, the government does not dispute that the mens rea for arson under § 844(f) can be reckless, and not just intentional, conduct. *See, e.g.*, *United States v. Wiktor*, 146

12

F.3d 815, 818 (10th Cir. 1998) (concluding that the district court correctly instructed the jury as to the mens rea required for § 844(i), which is a statute similar to § 844(f) – *i.e.*, "maliciously" as used in § 844(i) can be either intentional or reckless conduct). The government also does not dispute that the *Fernandez-Ruiz* decision weighs in Mr. Johnson's favor. Instead, the government asserts that a recent opinion from the Supreme Court makes "clear that recklessness satisfie[s] the mens rea requirement for 'use' of physical force." Opp'n at 10.

The case on which the government relies is *Voisine v. United States*, 136 S. Ct. 2272 (2016). In *Voisine*, the Supreme Court addressed 18 U.S.C. § 922(g)(9), which prohibits a person convicted of a misdemeanor crime of domestic violence from possessing a firearm. A misdemeanor crime of domestic violence was defined, *inter alia*, as an offense that "has, as an element, the use . . . of physical force." 18 U.S.C. § 921(33)(A)(ii). The question presented for the Court was "whether misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct trigger the statutory firearms ban." *Voisine*, 136 S. Ct. at 2276. The Court held that they could.

The Court noted first that "[n]othing in the word 'use' – which is the only statutory language either party thinks relevant – indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." *Id.* at 2278. For example, "the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so." *Id.* at 2279. Moreover, "Congress's definition of a 'misdemeanor crime of violence' contains no exclusions for convictions based on reckless behavior." *Id.* at 2280.

The Court then went on to explain that the legislative history also supported recklessness as an adequate mens rea.

> Congress enacted § 922(g)(9) in 1996 to bar those domestic abusers convicted of garden-variety assault or battery misdemeanors – just like those convicted of felonies from owning guns. Then, as now, a significant majority of jurisdictions – 34 States plus the District of Columbia – defined such misdemeanor offenses to include the reckless infliction of bodily harm. That agreement was no coincidence. Several decades earlier, the Model Penal Code had taken the position that a *mens rea* of reckless should generally suffice to establish criminal liability, including for assault. Sates

13

> quickly incorporated that view into their misdemeanor assault and
> battery statutes. So in linking § 922(g)(9) to those laws, Congress
> must have known it was sweeping in some persons who had
> engaged in reckless conduct.

*Id.*

The Supreme Court added that adopting a contrary position would "render[] § 922(g)(9) broadly inoperative in the 35 jurisdictions with assaults laws extending to recklessness – that is, inapplicable even to persons who commit that crime knowingly or intentionally." *Id.* Under Supreme Court precedent, "[i]f a state crime 'sweeps more broadly' than the federally defined one, a conviction for the state offense 'cannot count' as a predicate, no matter what *mens rea* the defendant actually had." *Id.* at 2280-81. Therefore, a state assault statute making it unlawful for a person to intentionally, knowingly, or recklessly injure another would have no force.

The government's reliance on *Voisine* is not without merit. Indeed, in a post-*Voisine* case, the Ninth Circuit has acknowledged that its holding in *Fernandez-Ruiz* – *i.e.*, that "'neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16'" – is in tension with *Voisine* as the latter "suggested the opposite," holding that "for purposes of a similar statute – 18 U.S.C. § 921(a)(33)(A) – reckless conduct can constitute a crime of violence." *United States v. Benally*, No. 14-10452, 2016 U.S. App. LEXIS 20048, at *9 (9th Cir. Nov. 7, 2016).

However, the Court declines to adopt the government's position. In *Benally*, the Ninth Circuit declined to make any definitive ruling on *Voisine*'s impact. The court refrained from resolving any tension between *Voisine* and *Fernandez-Ruiz* and in fact relied on *Fernandez-Ruiz* in finding an earlier Ninth Circuit decision in *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987) no longer good law. *See id.* at *9-10. The Court is thus reluctant to find the Ninth Circuit's ruling in *Fernandez-Ruiz* is no longer good law. It was not overruled in *Benally*. *But see United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) (holding that, following *Voisine*, reckless conduct can constitute use of force under the ACCA "because the force clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the

'use . . . of physical force' against another").[4]

More important, in *Voisine* itself, the Supreme Court highlighted that its decision "concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior. Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states." *Voisine*, 136 S. Ct. at 2280 n.4. Although *Voisine* indicated that the use-of-physical-force language, "naturally read, encompasses acts of force undertaken recklessly – *i.e.*, with conscious disregard of a substantial risk of harm," the Supreme Court's holding was also clearly informed by the "state-law backdrop to [§ 922(g)(9)], which included misdemeanor assault statutes covering reckless conduct in a significant majority of jurisdictions [which] indicates that Congress meant just what it said." *Voisine*, 136 S. Ct. at 2282. While the use-of-physical-force language is present in § 924(c)(3)'s residual clause as well, there is no legislative history before the Court establishing that recklessness is in fact a sufficient mens rea under § 924(c)(3)(B).

Applying *Fernandez-Ruiz*, the Court agrees with Mr. Johnson that arson under § 844(f) is not a crime of violence for purposes of § 924(c)(3)'s residual clause. Arson can be based on reckless conduct, but, under *Fernandez-Ruiz*, the residual clause of § 924(c)(3) requires intentional use of force, not mere recklessness.

E. Stay

For the foregoing reasons, the Court concludes that Mr. Johnson's § 2255 petition is meritorious. The residual clause of § 923(c)(3) is unconstitutionally vague, and Counts 10, 15, and 21 (arson) and Count 23 (witness tampering) cannot be deemed crimes of violence under the statute's elements clause. The only question remaining is what relief Mr. Johnson is entitled to. Mr. Johnson asserts that, even though he has challenged only four of his sixteen convictions, the Court should resentence as to all counts of conviction, including those not challenged. For support, he cites *United States v. Handa*, 122 F.3d 690 (9th Cir. 1997), where the Ninth Circuit

---

[4] The dissenting judge in *Fogg* criticized the majority for reaching this holding "on a plain error standard of review and without the benefit of full briefing or argument. This is especially true when [*Voisine*] expressly distinguishes itself from the statutory provision at issue." *Fogg*, 836 F.3d at 963 n.2 (Bright, J., dissenting).

noted as follows: "The plain language of § 2255 does not support [the] argument that in all circumstances, the court is limited in its resentencing options to only the count challenged in the motion"; indeed, because the statute "authorizes the court to act 'as may appear appropriate[,]' . . . it confers upon the district court broad and flexible power in its actions following a successful § 2255 motion. *Id.* at 691. The Ninth Circuit added that this approach makes sense because a

> the multiple sentences given a defendant convicted of more than one count of a multiple count indictment [are] "a package," reflecting the likelihood that the sentencing judge will have attempted to impose an overall punishment taking into account the nature of the crimes and certain characteristics of the criminal. When part of the sentence is set aside as illegal, the package is "unbundled." After the unbundling the district court is free to put together a new package reflecting its considered judgment as to the punishment the defendant deserves for the crimes of which he is still convicted.

*Id.* at 692; *see also United States v. Barker*, 583 Fed. Appx. 810, 810 (9th Cir. 2014) (noting that, under *Handa*, a court is free, after the grant of a § 2255 petition, "to reassess the possible sentencing options and construct a new sentencing package that 'reflect[s] its considered judgment as to the punishment the defendant deserves for the crimes of which he is still convicted'") and so "the district court was entitled to reconsider whether Barker's criminal conduct and personal characteristics warranted imposing his current sentence consecutively to his prior undischarged sentence").

Based on *Handa*, the Court agrees with Mr. Johnson's approach. The Court, however, shall stay resentencing pending the Supreme Court's decision in *Dimaya*. A stay will not be prejudicial to Mr. Johnson; because of his serious unchallenged convictions (*e.g.*, the drug-related crimes), even if he were to be resentenced, he would likely be confined through the time the Supreme Court rules on *Dimaya*.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Mr. Johnson's amended § 2255 petition but stays resentencing pending a decision by the Supreme Court in *Dimaya*.

///

///

///

16

The parties shall file a status conference statement within six (6) months of the date of this order. The parties may file such a statement earlier if the Supreme Court decides *Dimaya* prior to the above-referenced date.

This order disposes of Docket No. 483.

**IT IS SO ORDERED**.

Dated: December 16, 2016

_____
EDWARD M. CHEN
United States District Judge